IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK MUDRON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 C 8708 |
| | ) | |
| | ) | |
| BROWN & BROWN, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Brown & Brown, Inc.'s ("Brown & Brown") motion for summary judgment and motions to strike Plaintiff's expert's declaration. For the reasons stated below, we grant Brown & Brown's motion for summary judgment and Brown & Brown's motions to strike Mudron's expert declarations. We also deny Mudron's motion for an adverse inference regarding the deposition testimony of J. Hyatt Brown, and Brown & Brown's motion to strike plaintiff's materials in opposition to summary judgment.

## BACKGROUND

Plaintiff Patrick Mudron ("Mudron") is a former employee of Brown & Brown, a Florida insurance company doing business in Illinois. Mudron alleges that prior to working for Brown & Brown, he was employed by Brown & Brown's predecessor, John Manner Insurance Agency ("JMI"), from 1977 until JMI was purchased by Brown & Brown in September 2002. Mudron also alleges that upon Brown & Brown's purchase of JMI, he was required to sign an employment agreement with Brown & Brown stating that his clients belonged to Brown & Brown, before Mudron could be employed by Brown & Brown. Mudron claims that at the time of JMI's acquisition by Brown & Brown, there were four outside sales agents, only two of which, including Mudron, were over the age of fifty. Mudron alleges that after the acquisition, Brown & Brown representatives never met with Mudron or the other sales agent over age fifty, but that they did meet with the two younger sales agents to discuss "compensation, business and future plans." (Compl. Par. 13).

Mudron alleges that on April 11, 2003, Brown & Brown terminated the employment of both Mudron and the other sales agent over age fifty. Mudron additionally alleges that Brown & Brown replaced Mudron with a new sales agent, aged thirty-five, who had "substantially less sales experience" than Mudron. (Compl. Par. 16). Mudron further alleges that Brown & Brown has hired several "substantially younger employees" since his termination. (Compl. Par. 22). Mudron

2

claims that on July 17, 2003, he filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC"), in which he alleged that Brown & Brown engaged in age discrimination. (Compl. Par. 26). Mudron further claims that after his filing with the EEOC, Brown & Brown filed a "baseless complaint in state court, alleging that Mudron breached his employment agreement with Brown & Brown." (Compl. Par. 27). Mudron then filed the instant action, in which he includes claims of age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* (the "ADEA") (Count I), and an ADEA retaliation claim (Count II). Brown & Brown now move for summary judgment on all counts.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing

3

out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must consider the evidence as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255.

## DISCUSSION

Brown & Brown is seeking summary judgment on Mudron's age discrimination claims (Count I) and Mudron's retaliation claim (Count II).

## I. Age Discrimination Claims (Count I)

Mudron claims that "Brown & Brown intentionally discriminated against [Mudron] on the basis of age in violation of the ADEA when it terminated him without cause" and replaced him with younger employees. (Compl. Par. 22). The

4

ADEA prohibits employers from discrimination against employees because of their age. 29 U.S.C. § 623(a). For an employee to defeat a motion for summary judgment on an ADEA claim, the employee may use the direct or indirect method of proof. *Schuster v. Lucent Technologies, Inc.,* 327 F.3d 569, 573 (7th Cir. 2003). A plaintiff bringing an ADEA claim can also succeed by showing a "pattern or practice" of age discrimination by the defendant. *See Adams v. Ameritech Services, Inc.*, 231 F.3d 414, 422 (7th Cir. 2000). Mudron claims that he can prevail under each of these approaches. (Resp. 10).

## A. Direct Method of Proof

To prevail using the direct method of proof, a plaintiff must "essentially [show] an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 616 (7th Cir. 2000). Given that such direct statements are rare "in today's politically correct workplace environment," a plaintiff can also satisfy the direct method showing a "'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decision-maker.'" *Jordan v. City of Gary, Ind.*, 396 F.3d 825, 832 (7th Cir. 2005)(citing *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir.2004)). This circumstantial evidence, however, must directly show that there was a "discriminatory reason [behind] the employers' action." *Id.*

In the instant action, Mudron alleges a number of reasons in support of its

opposition to Brown & Brown's motion for summary judgment. First, Mudron claims that John Manner ("Manner"), Mudron's direct supervisor and the original owner of JMI, had told Mudron that he was in "full compliance with his validation agreement when Defendant fired him," and based on such a statement, Mudron contends that there is "compelling evidence of discrimination and pretext." (Resp. 11). Mudron also claims that Brown & Brown has provided "conflicting evidence" in regard to a number of issues in this action, which Mudron alleges is "strong evidence of pretext." (Resp. 12). Specifically, Mudron alleges that two of Brown & Brown's "biggest reasons" for firing Mudron "d[id] not even appear in Defendant's EEOC position statement," and that Brown & Brown has presented "conflicting evidence about who actually made the decision" to fire Mudron. (Resp. 12). Mudron also alleges that Brown & Brown has stated that it did not have a progressive discipline policy when in fact it did have one, and that Brown & Brown failed to follow this policy, which Mudron contends is "evidence of discrimination." (Resp. 12). In a similar vein, Mudron claims that Brown & Brown "failed to follow its termination policy" when it did not include the reason for Mudron's termination in his personnel file. (Resp. 12). Finally, Mudron claims that the reasons for Mudron's termination that were listed on his "Termination Worksheet and Separation Form" were different from those given to the EEOC, and that Brown & Brown failed to adequately explain "why Defendants did not contest Plaintiff's . . . application for unemployment benefits if he had in fact been terminated for serious

6

misconduct." (Resp. 12-13).

To begin, Mudron points to no direct "admission by [Brown & Brown showing] that [its] actions were based on the prohibited animus." *Radue,* 219 F.3d at 616. The closest thing to such an admission is a statement by J. Hyatt Brown ("Brown"), the CEO of Brown & Brown. In a deposition, Brown stated that "one of the things that we do is hire young people, and young people would be 27, 26 to 32 to 35" and that "[w]e like to have people that are . . . four to eight years out of college and have either a sales background or a financial background." (P's SOF Par. 26). However, in this same deposition, Brown stated that this was not a written policy, that "each profit center manager may have an to opportunity to find people that are older, younger, what have you," and that "the most important thing is, [whether] the [recruits] can make it happen for" the company. (P's SOF Par. 26). Brown also stated that the reason Brown & Brown recruits from "a 27- to 32- or 35-year-old-range" is that "those people generally are in [such] a price range that they're affordable." (D's Resp. P's SOF Par. 26).

The Seventh Circuit has stated that "[a] statement of discriminatory animus must be made by a decisionmaker and relate to the action at issue." *Balderston v. Fairbanks Morse Engine Div. of Coltec Industries*, 328 F.3d 309, 313 (7th Cir. 2003)(finding that a statement by a company's vice president "remark[ing] that he favored eliminating all managers over 55" was not enough to find age discrimination). In the instant action, the extent to which Brown was a decision

7

maker in regard to Mudron's termination is disputed. Moreover, Brown's statement in the deposition related to Brown & Brown's general hiring practices. The statement was not referring to a concrete policy and, more importantly, it was not related to firing practices, which is the "action at issue" here. *Id.* Furthermore, a great number of companies focus their recruiting practices, at least in part, on younger employees, as seen by the large number of companies that attend college career fairs, hold on-campus interviews, and have internship programs for students. If having, or commenting upon, hiring practices like Brown & Brown's was sufficient for establishing direct evidence of age discrimination, the federal courts would be flooded with ADEA claims. Therefore, we find that Mudron has not shown an "admission" by Brown & Brown sufficient to support a finding of direct evidence of age discrimination.

Mudron also has not shown sufficient circumstantial evidence to support a finding of age discrimination. The Seventh Circuit has identified three types of evidence that can be sufficient proof to survive under the circumstantial evidence method: "(1) suspicious timing, ambiguous statements, and behavior toward or comments directed at other employees in the protected group; (2) evidence that employees similarly situated to the plaintiff but outside the protected class received systematically better treatment; or (3) evidence that the plaintiff was qualified for a job in question, but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in

8

treatment is unworthy of belief, a mere pretext for discrimination." *Ulmer v. Elkhart County*, 2005 WL 1910909, at *7 (N.D. Ind. 2005)(citing *Troupe v. May Dep't Store Co.*, 20 F.3d 734, 737 (7th Cir.1994)). As is more fully explained below in regard to the indirect method of proof, Mudron has not presented sufficient evidence to show a convincing mosaic of age discrimination. Mudron has not pointed to similarly situated individuals who received better treatment, nor can he show that the reasons given by Brown & Brown for his termination were pretextual. Therefore, we find that Mudron cannot prevail under the direct method of proof.

## B. Indirect Method of Proof

To prevail under the indirect approach, a plaintiff must first establish a *prima facie* case of age discrimination by showing that: "(1) he was a member of a protected class; (2) he was meeting his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees not in the protected class were treated more favorably." *Olson v. Northern FS, Inc.*, 387 F.3d 632, 635 (7th Cir. 2004). If the plaintiff is able to meet this burden, then "the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its adverse employment decision." *Gusewelle v. City of Wood River*, 374 F.3d 569, 574 (7th Cir. 2004). If the employer is able to do this, the burden shifts "back to the employee to present evidence sufficient to enable a fact finder to find that the employer's explanation is pretextual." *Id.*

9

In the instant action, Mudron, who was 53 years old when he was fired from Brown & Brown, clearly meets prongs one and three of the above test. However, Mudron cannot show that he was meeting Brown & Brown's "legitimate job expectations." *Id.* Mudron alleges that he was "fully performing" under his employment agreement, which he claims is circumstantial evidence that his termination was based on discrimination. (Resp. 11). The undisputed evidence, however, does not support this contention. Brown & Brown's statement of facts states that between 1977 and 2002, "Mudron's entire book of business amounted to approximately $360,000," and that "[l]ast year, Manner wrote more business than Mudron had during his entire year." (D's SOF Par. 20-21). In his response to the statement of facts, Mudron does not dispute these claims, but simply states that "the term 'wrote' is vague and undefined." (P's Resp. D's SOF Par. 20-21). Mudron also does not deny in his response to Brown & Brown's statement of facts that "[i]t took [another, younger employee] only five years to sell a book of business that was larger than the book of business that Mudron had built over his twenty-six year career . . . ." (P's Resp. D's SOF Par. 22). Therefore, we find that Mudron has not disputed Brown & Brown's assertion that Mudron was terminated, at least in part, because Mudron failed to meet Brown & Brown's performance expectations.

Mudron also fails to dispute Brown & Brown's claim that Mudron was also terminated for having a negative attitude regarding his employment with Brown & Brown. In Brown & Brown's statement of facts, it states that Mudron's "demeanor

around the office was 'extraordinarily negative' toward Brown & Brown which Wagner [a Brown & Brown manager] believed could be contagious." (D's SOF Par. 67). Brown & Brown also claims that "Mudron did not smile or interact with others" and that he was "poisonous around the office." (D's SOF Par. 68-69). Mudron's responses to these statements of facts, however, are not sufficient under Local Rule 56.1, which "require[s] that a party opposing summary judgment file 'a concise response to the movant's statement that shall contain ... a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Leibforth v. Belvidere Nat. Bank*, 337 F.3d 931, 934 (7th Cir. 2003)(citing Northern District of Illinois, Local Rule 56.1(b)). A general denial is not sufficient. *Id.*

In the instant action, Mudron attempts to deny the above claims regarding his attitude at work by pointing to portions of his own declaration. In this declaration, however, Mudron simply states that he "never had a negative attitude at work[, he] did not fail to interact with others[, and] no one ever criticized, reprimanded, warned, counseled or discussed" attitude problems with him. (P's Decl. 4, Par. 12). These are conclusory denials that are insufficient under Local Rule 56.1 and therefore, pursuant to the rule, Brown & Brown's statements regarding Mudron's attitude at work are deemed admitted. Furthermore, Mudron cannot himself testify accurately to the outward impression that he made on others, and he does not point

11

to any evidence other than his own testimony to refute the allegation of a bad attitude. Mudron also admits in his response to Brown & Brown's statement of facts that Mudron "discussed his restrictive covenant with others at the Joliet Country Club [and] that he discussed ways he might get around the restrictive covenant." (P's Resp. D's SOF Par. 75). Given all of this evidence, we find that no reasonable trier of fact could find other than that Mudron was an openly disgruntled employee of Brown & Brown.

Mudron also claims that Brown & Brown has given conflicting reasons for Mudron's termination, which Mudron alleges is "compelling evidence of discrimination and pretext." (Resp. 11). It is true that "the consistency of the explanation provided by an employer at the time of an employment decision and in an administrative proceeding is evidence of the veracity of the employer's explanation at summary judgment" and a party "may avoid summary judgment by pointing to specific facts that place [an employer's] explanation in doubt." *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 677 (7th Cir. 2003). However, we fail to see how Brown & Brown have given such conflicting statements that a denial of summary judgment would be proper.

In *Zaccagnini*, which was cited by Mudron, the employer gave two entirely different reasons for not rehiring the plaintiff. At one point, the employer stated that the plaintiff was not rehired because the company had a blanket no-rehire policy, and at another time the employer stated the plaintiff was not rehired because hiring

12

was limited to union members. *Id.* In the instant action, Mudron's allegations on this point can simply be boiled down to a claim that Brown & Brown did not use the exact same words every time it explained its reasons for Mudron's termination. In Mudron's statement of facts, he states that on a "'Termination Worksheet'" Brent Wagner ("Wagner"), a JMI manager, "wrote that Plaintiff had been terminated for 'Poor Performance'" but that on an "'Employee Separation Form' . . . Wagner only marked the box next to 'refused to perform job duties.'" (P's SOF Par. 63-64). Mudron further states that Wagner "did not mark the boxes next to 'violation of company policy' or 'improper conduct.'" (P's SOF Par. 64). Mudron also claims that "[i]n its EEOC Position Statement, Brown & Brown claimed that it terminated Plaintiff for: 1) openly showing 'disdain' for Brown & Brown . . .; 2) badmouthing Brown & Brown in the community; and 3) failing to develop new business." (P's SOF Par 65). We fail to see how failing to develop business and showing disdain for one's employer is different from showing "poor performance," or from "refus[ing] to perform job duties." While each of these statements may have been more or less specific than the others, they are by no means incompatible or inconsistent. Therefore, Mudron's reliance on *Zaccagnini* is not supported by the facts in the instant action.

Mudron has also failed to establish that Brown & Brown treated "employees similarly situated to the plaintiff but outside the protected class" differently than the company treated Mudron. *Ulmer v. Elkhart County*, 2005 WL 1910909, at *7 (N.D.

13

Ind. 2005). The only evidence presented by Mudron that even remotely touches on the issue of similarly situated employees is Mudron's claim that "Manner negotiated himself and Wagner five-year employment contracts" that Mudron did not receive when JMI was purchased by Brown & Brown. (P's SOF Par. 13). However, given that Manner had been the owner of JMI before it was sold and that Mudron also admits Wagner had been promoted "to the position of profit center manager" before the sale, we cannot find that Manner and Wagner were similarly situated employees in relation to Mudron.

Finally, Mudron has also failed to demonstrate to the court that the reasons given by Brown & Brown for Mudron's termination are pretextual. In order to show pretext, Mudron "must do more than demonstrate that the employer made a mistake or that the employer's reason was not good enough to support its decision." Balderston v. Fairbanks Morse Engine Div. of Coltec Industries 328 F.3d 309, 323 (7th Cir. 2003). This means that Mudron " must provide 'evidence tending to prove that [Brown & Brown's] reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge.'" *Id.* (quoting *Testerman v. EDS Technical Prods. Corp.,* 98 F.3d 297, 303 (7th Cir.1996)). Mudron must also "cast doubt on each" of the reasons offered by Brown & Brown in order to show that its reasons were pretextual. In its motion for summary judgment, Brown & Brown cites a number of reasons for its termination of Mudron, including "his poor attitude [and] his lack of performance . .

. ." (D's Mot. 12). Since, as discussed above, Mudron has not disputed that he had a bad attitude or that he was not performing at an acceptable level, we find that Mudron has not shown that his firing from Brown & Brown was pretextual. Therefore, we find that Mudron has failed to show direct or in direct evidence of age discrimination.

### C. Pattern and Practice

Mudron also claims that he can prevail on his age discrimination claim by showing that Brown & Brown had a pattern and practice of discrimination. In response to Mudron's pattern and practice claim, Brown & Brown moves to strike the expert report of Mudron's expert Dr. Effact Moussa ("Moussa") and moves to strike the supplemental report provided by Moussa. In the instant action Moussa performed an analysis or data regarding the hiring and firing of Brown & Brown's producers over a five year period. Brown & Brown's rebuttal expert Dr. Brendan Burke has pointed out a variety of legitimate flaws in Moussa's analysis. For instance, Moussa improperly decided, in defining her sample of employees, to include employees that left Brown & Brown voluntarily. The issue in the instant action is whether there was a pattern of involuntary terminations. Mudron alleges that he was involuntarily terminated rather than that he left Brown & Brown voluntarily. Moussa also makes errors such as an arithmetic error in Table 7, in which Moussa under-represents the number of voluntary terminations. The inability

15

to conduct simple arithmetic draws into question Moussa's competence and the reliability of her complex analysis and conclusions. Also, the arithmetic error impacts further on the analysis in her report and thus improperly supports a variety of conclusions in the report.

Moussa also engages in a statistical analysis of the age of employees at the time of hiring and at the time of involuntary termination and Moussa analyzes the length of service of Brown & Brown's employees. Such a statistical analysis is meaningless in this action, is irrelevant, and is merely an attempt by Moussa to cloak her ultimate conclusions with the guise of a statistical analysis. As is indicated in her conclusions, the average age of employees hired and the average age of those fired is above forty. As the Seventh Circuit has made clear, it is unlikely that a company would make a practice of hiring employees then quickly turning around and firing them. *Rand v. CF Industries*, Inc. 42 F.3d 1139, 1147 (1994)(stating that because the plaintiff "was hired while in the protected class, and fired by the same person who hired him after a relatively short period of time . . . [i]t seems rather suspect to claim that the company that hired him at age 47 'had suddenly developed an aversion to older people' two years later").

Finally, Moussa neglects to provide any analysis regarding non-discriminatory explanations for the statistics. This is not surprising, considering that Moussa was paid by Mudron to perform this analysis. The fact that there are possible justifications for the data results other than unlawful discrimination clearly shows

16

that Moussa was only interested in doing what she was paid for, which was to write a report that supports a finding of discriminatory practices by Brown & Brown. Therefore, based upon the flaws, inaccuracies, and deficiencies in the Moussa report, we grant Brown & Brown's motion to strike the Moussa report.

Brown & Brown also moves to strike the supplemental report created by Moussa. After Brown & Brown's rebuttal expert Burke pointed out a series of flaws and deficiencies in Moussa's report, Mudron, discovering that the criticisms were legitimate, has asked Moussa to prepare a supplemental report, which was submitted to the court. However, the so-called supplemental report was in fact ten pages longer than the original report, contained new data, and new analysis. The deadline for the filing of Mudron's expert report was April 5, 2005, and the supplemental report was filed on June 7, 2005, more than two months after the expert report deadline. Therefore, we strike the supplemental report on the basis that it was untimely.

Brown & Brown also argues that Mudron has not pointed to sufficient evidence to support his pattern and practice claim. To win a pattern and practice claim, "the plaintiff must show that there is regular, purposeful, less-favorable treatment of a protected group." *King*, 960 F.2d at 623. In the instant action, Mudron points to no evidence other than his statistical evidence in support of his pattern and practice claim. As is indicated above, Moussa's statistical analysis is stricken, but even if the court were to consider Moussa's report this evidence is not

sufficient to defeat B&B's motion for summary judgment on the pattern and practice claim. *See Adams*, 231 F.3d 423-24 (7th Cir. 2000)(stating that "statistics standing alone [cannot] prove causation; they [can] only show a relation between the employer's decisions and the affected employees' traits").

The only evidence Mudron has offered in support of his argument of a pattern and practice of discrimination, besides the statistical report, is the statements by Brown regarding Brown & Brown's informal hiring practices. However, as is explained in detail above, Mudron takes the comment out of context. Brown indicated that Brown & Brown recruits individuals that usually are young people because young people are the only individuals who will accept salaries that Brown & Brown can afford to pay. (D's Resp. P's SOF Par. 26) In order to clarify any confusion, Brown in fact explicitly represented at his deposition that Brown & Brown did not consider age in hiring or firing at Brown & Brown and that Brown & Brown based such decisions on the merits of the individual rather than any factor such as age. (D's SOF Par. 31)(stating that Brown & Brown "recruit[s] anybody who can make it happen"). This deposition testimony does not show a pattern and practice of age discrimination by Brown & Brown. Therefore, based upon the above analysis, we grant Brown & Brown's motion for summary judgment on Count I.


## II. Retaliation (Count II)

Mudron also claims that Brown & Brown retaliated against him for "filing a

18

charge of age discrimination." (Compl. Par. 28). Specifically, Mudron alleges that Brown & Brown filed a lawsuit against Mudron for breach of contract because Mudron had filed a complaint against Brown & Brown with the EEOC. (Compl. Par. 27). In order to succeed on a retaliation claim under ADEA, Mudron must show that: "(1) [he] engaged in statutorily protected activity; (2) [he] suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action." *Horwitz v. Board of Educ. of Avoca School Dist. No. 37*, 260 F.3d 602, 612 (7th Cir. 2001). With claims of post-termination retaliatory actions, the allegedly retaliatory action must "have a nexus to employment [to be] actionable . . . ." *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 888 (7th Cir. 1996).

In the instant action, Mudron engaged in protected activity by filing a claim with the EEOC. However, we fail to see how Brown & Brown's lawsuit regarding Mudron's alleged breach of their restrictive covenant can be considered an "adverse employment action." *Horwitz v*, 260 F.3d at 612. Mudron claims that he was unable to secure employment with several other companies after his termination from Brown & Brown, because of the lawsuit regarding the restrictive covenants. (P's SOF Par. 73, 74). However, Brown & Brown was simply seeking a judicial determination regarding a contract between Mudron and the company, an action that they clearly had a right to do. *See Earl v. Electro-Coatings of Iowa, Inc.*, 2002 WL 32172298, at *2 (N.D. Iowa 2002)(finding that a counterclaim filed by an employer

19

after employee was terminated could not be considered post-termination retaliation). Mudron has argued that Brown & Brown's lawsuit is "baseless" because Brown & Brown has not filed a motion for either a temporary restraining order or a preliminary injunction. We find such argument lacks merit. (Compl. Par. 27); (P's SOF Par. 72). A plaintiff in a lawsuit does not need to seek certain remedies in order to have filed a legitimate suit. If Brown & Brown believes that potential recovery of monetary damages is sufficient to remedy any harm it may have suffered, that is its decision, and such a decision does not render the lawsuit baseless. Finally, Mudron does not dispute that after Mudron's termination and *before* he filed a complaint with the EEOC, which is the relevant protected activity for purposes of the retaliation claim, "Brown & Brown sent Mudron two cease and desist letters," one of which specifically stated that Brown & Brown would file suit against him unless he promised to refrain from certain activities that violated the restrictive covenant. (P's Resp. D's SOF Par. 126). We find that Brown & Brown's lawsuit against Mudron is not a retaliatory action under ADEA. Therefore, based upon the above analysis, we grant Brown & Brown's motion for summary judgment on Count II.


III. Miscellaneous Motions

Both Brown & Brown and Mudron have filed various other motions that are pending in the instant action. First, Mudron has filed a motion for an adverse inference regarding the deposition testimony of J. Hyatt Brown. As discussed

above, we fail to see how Brown's testimony regarding Brown & Brown's informal hiring practices has any impact on Mudron's age discrimination claim. Therefore, we deny the motion. Brown & Brown also filed a motion to strike plaintiff's materials in opposition to summary judgment. Because the materials contained therein do not alter the court's ultimate conclusions, we deny the motion as moot.

## CONCLUSION

Based on the foregoing analysis, we grant Brown & Brown's motion for summary judgment and Brown & Brown's motions to strike Mudron's expert report and the supplemental expert report. We deny Mudron's motion for an adverse inference regarding the deposition testimony of J. Hyatt Brown. We also deny Brown & Brown's motion to strike plaintiff's materials in opposition to summary judgment.


Samuel Der-Yeghiayan
United States District Court Judge


Dated: November 8, 2005